## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**MARK DANIEL CROWLEY**                                         **PLAINTIFF**
**ADC #133058**

**V.**                            **NO. 4:24-cv-00397-BSM-ERE**

**LEMONS**, *et al.*[1]                                          **DEFENDANTS**

### RECOMMENDED DISPOSITION

I.    **Procedure for Filing Objections:**

      This Recommendation has been sent to United States District Judge Brian S.

Miller. You may file written objections to all or part of this Recommendation.  Any

objections filed must: (1) specifically explain the factual and/or legal basis for the

objection; and (2) be received by the Clerk of this Court within fourteen (14) days

of the date of this Recommendation. If you do not object, you risk waiving the right

to appeal questions of fact, and Judge Miller can adopt this Recommendation

without independently reviewing the record.

II.   **Background:**

      *Pro se* plaintiff Mark Daniel Crowley, an Arkansas Division of Correction

inmate, filed this lawsuit under 42 U.S.C. § 1983 claiming he was subject to

unconstitutional conditions of confinement during his incarceration at the Pulaski

---

[1] The Clerk is instructed to update the docket sheet to reflect the full names of Defendants
Lee and Madrigal – Amanda Lee and Ignacio Madrigal.

County Regional Detention Facility ("PCRDF").[2] *Doc 2.* Defendants are PRDCF officers Sergeant Amanda Lee and Deputies Lemons, Arce, and Ignacio Madrigal. Mr. Crowley alleges that Defendants refused to provide him a "suicide mattress," which caused him to suffer sleep deprivation and injuries to his back, shoulder, and arms. He sues each defendant in his or her individual and official capacities, seeking compensatory and punitive damages and injunctive relief.

Defendants have now filed a motion for summary judgment, brief in support, and statement of facts. *Docs. 72, 73, 74.* Mr. Crowley responded to the motion (*Docs. 76, 80, 81, 82*), and Defendants have filed a reply. *Doc. 76.* The motion is now ripe for review.

For reasons stated below, I recommend that Defendants' motion for summary judgment (*Doc. 72*) be granted.

## III. <u>Discussion:</u>

### A.    **Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.

---

[2] The Court previously dismissed Mr. Crowley's claim regarding Defendants' denial of access to the kiosk machine, his official capacity claims against Defendants, and his claims against Defendant Jones. *Docs. 7, 25.*

In response to Defendants' motion for summary judgment, Mr. Crowley alleged an Americans with Disabilities Act ("ADA") claim. *Doc. 76 at 114.* However, he did not plead an ADA claim in his complaint, nor did he allege facts that would support such a claim.

See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

## B. Mr. Crowley's Deposition Testimony

In deposition, Mr. Crowley acknowledged that during his incarceration at the PCDF, he intentionally injured himself multiple times through acts of self-harm, including cutting his scrotum and sticking a pencil in his neck and testicle. *Doc. 74-9 at 19.* Each time Mr. Crowley harmed himself, he received medical care at the University of Arkansas for Medical Sciences and was released back to the PCDF, where he spent time on suicide watch. *Id. at 16.*

Mr. Crowley recalled two periods on suicide watch when he was denied use of a "suicide mattress," which he described as "about eight inches thick and . . . made of durable vinyl."[3]  *Id. at 21-22.*  The periods Mr. Crowley went without a suicide

---

[3] Mr. Crowley explained that he knew about suicide mattresses because he had been

mattress were: (1) September 9 through December 5, 2023 (87 days); and (2) December 21, 2023 through January 24, 2024 (34 days).[4] *Doc. 74-9 at 14, 29*. During those periods, Mr. Crowley was permitted to have only one item, a "smock mock," which he stated was called a suicide blanket. *Id. at 16*. However, he stated that a smock mock was not "really a blanket" and "so bulky you can't fully wrap up in it." *Id. at 16*. He described the blanket as "real thick" but "not warm." *Id*.

Mr. Crowley recalled that he requested a suicide mattress and reported his request to "the deputies that were on duty, whoever was on duty." *Id. at 20*. He stated that he asked Defendant Lemons for a suicide mattress at least once (*Id. at 24*) and "these defendants several times." *Id. at 25*. According to Mr. Crowley, when he was booked into PCRDF, he saw the suicide mattresses stacked in the hallway (*Id. at 25, 27-28*), but when he requested a suicide mattress from a Defendant, he or she responded, "We'll see" or "We're not the ones that do that." *Id. at 25*. Mr. Crowley testified that that he did not see any other inmates on suicide watch with a suicide mattress, and that one Defendant, whose identity he could not recall, told him, "We don't have any right now." *Id. at 26*.

When asked how he was harmed by not having a suicide mattress, Mr.

---

placed on suicide in the past and received such a mattress. *Doc. 74-9 at 22*.

[4] Mr. Crowley stated that he had a standard mattress from December 5 through December 21, 2023, and he was provided a suicide mattress on January 24, 2023.  Doc. 74-9 at 13.

Crowley answered that it was a torturous situation, nothing but steel and concrete, and his shoulders were injured. *Id. at 31-32*. He recalled that he told medical personnel about his shoulder pain, but he could not submit a sick-call request because he did not have access to pens, paper, or the kiosk system. *Id. at 32*.

Mr. Crowley alleges that as a result of not having a suicide mattress, he suffered sleep deprivation[5] and has weakness and shooting pain in his shoulders. *Id. at 32*).

Mr. Crowley was released from the Detention Center and transferred to ADC custody on March 21, 2024, where medical personnel saw him "[a]bout 20 times," but only provided him ibuprofen. *Id. at 33*. Mr. Crowley acknowledged that ADC medical personnel concluded that he had full range of motion in his shoulders. *Id. at 34*. He stated, "But, hey, it still hurts. It still hurts." *Id*.

Mr. Crowley testified that he was released from the ADC in November 2024[6] (*id. at 12*) and sought medical treatment at UAMS in January 2024 and at UAMS in Maumelle sometime between January and March of 2025. *Id. at 34-36*. UAMS

---

[5] In his complaint, Mr. Crowley generally alleged that he suffered "lack of sleep" from going without a suicide mattress. *Doc. 2 at 6*. However, he provides no details regarding his alleged sleep deprivation. Mr. Crowley's jail medical file includes reports showing that on sixteen occasions when mental health personnel visited Mr. Crowley's cell to conduct a mental health assessments, he looked to be asleep. The dates include September 23, September 24, October 9, October 10, October 26, October 27, November 7, November 12, November 22, November 24, November 25, November 26, November 30, December 2, December 3, and December 5. *Doc. 74-4 at 38, 40, 79, 81, 120, 121; Doc. 74-5 at 2, 8, 21, 24, 26, 34, 36, 38*.

[6] Mr. Crowley's release was temporary as he is currently listed as an ADC inmate.

medical providers did not x-ray Mr. Crowley's shoulder but did provide medication. *Id. at 36-37.* UAMS personnel at both locations indicated that Mr. Crowley's shoulder pain was "probably muscle soreness" (*Id. at 36*) and was "probably more muscular than skeletal." *Id. at 37.*

### C.    Defendants' Evidence

Defendants present the affidavit of non-party Sergeant James Hill. *Doc. 74-1.* Sergeant Hill reports that the PCRDF had no  suicide mattresses available during the relevant time frame, and jail officials followed policy by providing Mr. Crowley only a suicide smock and blanket while he was on suicide watch. *Doc. 74-1 at 1-2.* He explains that standard PCRDF mattresses are not made of "tamper-resistant materials" and are susceptible of being torn, which could provide suicidal inmates means to harm themselves or conceal objects that could be used for self-harm. *Id. at 2.*

By affidavit, Defendant Madrigal remembers that Mr. Crowley asked him for a mattress on one occasion, sometime during January 2024. *Doc. 74-11 at 1.* Defendant Madrigal recalls that in response to Mr. Crowley's request, he called his supervisor who told him that there were no suicide mattresses available. *Id.* Defendant Madrigal believes that, during January 2024, PCRDF officials ordered a small number of suicide mattresses to be tested for use at the facility. *Id.* Defendant Madrigal states  that he did not deny Mr. Crowley "a mattress as means of

punishment." *Id*.

### D.    Individual Capacity Claims

Each Defendant asserts qualified immunity, which protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant's entitlement to qualified immunity inquiry involves two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation. A defendant is entitled to qualified immunity unless the answer to both of these questions is yes, and a court may address the questions in any order. *Presson v. Reed*, 65 F.4th 357, 365 (8th Cir. 2023).

### 1.    Constitutional Violation

From September 5 through December 8, 2023, Mr. Crowley was a PCRDF pre-trial detainee. *Doc. 2 at 2*. On December 9, 2023, he was convicted on state charges, and from that date through March 21, 2024, he was detained at PCRDF as convicted inmate. *Id*. Mr. Crowley alleges that during both periods, Defendants subjected him to unconstitutional conditions of confinement by denying him a suicide blanket.

The Fourteenth Amendment's Due Process Clause sets the standard for Mr. Crowley's claims arising from his pretrial detention, but the Eighth Amendment's prohibition of cruel and unusual punishment governs the post-conviction period. *See Owens v. Scott County Jail,* 328 F.3d 1026, 1027 (8th Cir.2003) (citing *Bell v. Wolfish,* 441 U.S. 520, (1979)).

### a.    Fourteenth Amendment

In *Bell v. Wolfish*, the Supreme Court held that the proper inquiry when assessing the constitutionality of conditions of pretrial detention is whether those conditions amount to punishment of the detainee or otherwise violate the Constitution. *Bell v. Wolfish,* 441 U.S. 520, 536–37 (1979). The Court explained that pretrial conditions amount to punishment when they are:  (1) intentionally punitive; *or* (2) not reasonably related to a legitimate governmental purpose. *Id*. at 538–39. If conditions are  arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id*. at 539.

Here, Mr. Crowley offers no evidence from which a reasonable factfinder could infer that the conditions he experienced at PCRDF were intentionally punitive. In addition, there is no evidence that he endured arbitrary or excessive conditions of confinement. Rather, Defendants' failure to provide Mr. Crowley a mattress during the relevant time period was reasonably related to the legitimate purpose of safely

detaining Mr. Crowley and preventing self-harm. *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005) (finding no Fifth, Eighth or Fourteenth Amendment violation where "the deprivations imposed . . . were affirmative steps to secure [the detainee's] well-being, in furtherance of the jail staff's legitimate and non-punitive purpose of preventing [his] suicide or injury").

Although Mr. Crowley testified that he observed suicide mattresses in the hallway when he was booked into PCRDF, he acknowledged that he never noticed another inmate on suicide watch receive a suicide mattress. Sergeant Hill and Defendant Madrigal both testified that suicide mattresses were unavailable during the relevant period and that PCRDF officials did not order suicide mattresses until January 2024. That testimony is entirely consistent with Mr. Crowley's recollection that before January 24, 2024, an unidentified Defendant told him suicide mattresses were not available, but on January 24, 2024, PCRDF staff provided him a suicide mattress.

### b.    Eighth Amendment

The Constitution "does not mandate comfortable prisons," but it prohibits "inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be objectively, sufficiently serious, resulting in denial of the "minimal civilized measure of life's necessities." *Id*. (quoting *Rhodes v.*

*Chapman*, 452 U.S. 337, 342 (1981)). Second, the prison official's conduct must reflect a subjective state of mind showing deliberate indifference to the health or safety of the prisoner. *Id*. (citations omitted). Specifically, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id. at 837*.

Viewing the record most favorably to Mr. Crowley, no reasonable factfinder could conclude that: (1) the lack of a suicide mattress deprived him any of life's necessities; or (2) that an individual Defendant disregarded an excessive risk to his health or safety.

There is no "absolute Eighth Amendment right" to be put in a cell with bedding. *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Both the Eighth Circuit Court of Appeals and this Court have held that conditions similar to Mr. Crowley's fall short of establishing a constitutional violation. See *Owens v. Scott County Jail*, 328 F.3d 1026 (8th Cir. 2003) (reversing summary judgment where inmate slept on the floor next to a toilet for five weeks); and *Story v. Murry*, 2020 WL 5649751 (E.D. Ark. Sept. 4, 2020) (sleeping without a mattress for 20 days not a constitutional violation).

In addition, Mr. Crowley provides no evidence that any named Defendant subjectively disregarded a known, excessive risk to his health or safety. Mr. Crowley testified that, as a result of having to sleep without a suicide mattress, he experienced a loss of sleep and decreased strength and pain in his shoulder. While he generally alleges that he "couldn't sleep," he has failed to present any evidence that he specifically told a Defendant that he was suffering from prolonged sleep deprivation. *Doc. 74-9 at 24*. Mr. Crowley also has failed to present any evidence that he ever notified a Defendant that he was experiencing shoulder pain during the relevant time period. Rather, he specifically stated that he told unidentified medical personnel (non-parties) about the pain in his shoulder. *Doc. 74-9 at 32*.

The facts, viewed in a light most favorable to Mr. Crowley, fail to show he suffered a constitutional deprivation during his pretrial or postconviction detention at the PCDF, and each Defendant is therefore entitled to qualified immunity.

### E.    Official Capacity Claims

Mr. Crowley's claims against Defendants in their official capacities are claims against Defendants' employer—Pulaski County, Arkansas. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Official capacity claims require proof that a policy or custom of the employing entity caused the violation of the plaintiff's rights. *Id. at 166* (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)). Here, Mr. Crowley has not identified or presented evidence of a policy or

custom of the County that caused a violation of his constitutional rights. In addition, because there are no triable issues as to Defendants' individual liability for an underlying constitutional violation, the County cannot be liable under § 1983. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Defendants are therefore entitled to summary judgment on Mr. Mayfield's official capacity claims.

## IV.    Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment (*Doc. 72*) be GRANTED.

2.    Judgment as a matter of law be granted in Defendants' favor and Mr. Crowley's claims against Defendants be DISMISSED, with prejudice.

3.    The Clerk be instructed to close this case.

DATED 24 June 2025.

_____
UNITED STATES MAGISTRATE JUDGE